IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

THE ASSOCIATION OF CULTURAL
EXCHANGE ORGANIZATIONS, INC.,

    Plaintiff,

  v.     No. 1:20-CV-1225-JDB-jay

ANTONY BLINKEN, Secretary of State of the
United States, et al.,

    Defendants.

---

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

---

I.    INTRODUCTION

Before the Court is the motion of Defendants[1] to dismiss the claims of Plaintiff, the Association of Cultural Exchange Organizations, Inc. ("ACEO"), pursuant to Rules 12(b)(1) and 12(b)(6), Federal Rules of Civil Procedure ("Fed. R. Civ. P."). (Docket Entry ("D.E.") 9.) Defendants maintain that the Plaintiff's claims are not ripe for adjudication. In addition, Defendants contend that Plaintiff fails to state a claim under the Administrative Procedures Act ("APA") or pursuant to the Fifth Amendment of the United States Constitution. ACEO has responded, (D.E. 13), to which Defendants replied, (D.E. 15). For the reasons set forth herein, the Court **GRANTS** Defendants' motion.

---

[1] The Defendants in this case are: Antony Blinken, Secretary of State of the United States; Carl Risch, Assistant Secretary, Bureau of Consular Affairs; Marie Royce, Assistant Secretary of State, Bureau of Educational and Cultural Affairs; Matt Lussenhop, Principal Deputy Assistant Secretary, Bureau of Educational and Cultural Affairs; Kevin Saba, Managing Director, Office of Private Sector Exchange; and the United States Department of State.

1

II.     BACKGROUND AND PROCEDURAL HISTORY

A.     Background

ACEO is a non-profit corporation, organized under the laws of the state of Washington, whose members are sponsors of exchange programs operated through the Exchange Visitor Program ("EVP") of the United States Department of State ("Department of State"). (D.E. 1 at PageID 2.) Plaintiff's members sponsor thousands of foreign nationals annually to participate in exchange programs in the United States, including the EVP. (D.E. 1 at PageID 2.)

Through the Mutual Educational and Cultural Exchange Act of 1961, Pub. L. No. 87-256, 75 Stat. 527, 527–38 (1961) (codified as amended at 22 U.S.C. §§ 2451–2464), Congress authorized the Department of State to provide for educational exchanges "by financing visits and interchanges between the United States and other countries of students, trainees, teachers, instructors, and professors" when "it would strengthen international cooperative relations." 22 U.S.C. § 2452(a). As a result, the EVP was established. *See id.* § 2451.

The EVP allows foreigners to come temporarily to the United States to participate in educational and cultural exchanges. *See* 22 C.F.R. § 62.1. The EVP is intended to "assist in the development of friendly, sympathetic, and peaceful relations between the United States and . . . other countries." 22 U.S.C. § 2451.

The Department of State implements the EVP and designates third-party sponsors to administer programs within the EVP. *See* 22 C.F.R. § 62.1(b). In many cases, it is the sponsors' responsibility to help visitors find study, teaching, or training opportunities in the United States, oversee the visitors' stays, and monitor their welfare. (*See* D.E. 1 at PageID 5.)

The EVP is administered by the Department of State's Office of Private Sector Exchange. 10 Foreign Affairs Manual § 251(d). Two operational offices within the Private Sector Exchange

are relevant to these proceedings: the Office of Exchange Program Administration ("OPA") and the Office of Exchange Coordination and Compliance ("Compliance Office").

The OPA is responsible for daily monitoring of the EVP, including sponsor compliance with Department of State regulations. *Id*. § 252.3. It is also in charge of processing complaints from program participants and third parties. *Id.* Additionally, the OPA advises sponsors on making changes to help them become compliant with regulations. *Id.*

As part of its role, OPA attempts to resolve issues with sponsors, including following up on their actions to resolve matters and recommending best practices. *See* 72 Fed. Reg. 72,245, 72,247 (Dec. 20, 2007); 10 Foreign Affairs Manual § 252.3. As occurred with the Plaintiffs in this case, in some situations, the OPA issues a "letter of concern." These letters are sent if routine counselling does not settle an issue, the matter requires additional action, or the OPA believes it necessary to document its concerns with a sponsor. *See Small Sponsors Working Grp. v. Pompeo*, No. 1:19-2600-STA-JAY, 2020 WL 2561780, at *2 (W.D. Tenn. May 20, 2020) ("*SSWG v. Pompeo*").[2] The letters provide sponsors with notice of deficiencies and the opportunity to cure them before further action is considered. *See id.* If steps such as counselling and issuing letters of concern do not correct the matter, sanctions may be necessary. *See id.*

The Compliance Office conducts compliance reviews and determines whether to impose sanctions. *See* 10 *Foreign Affairs Manual* § 252.4. Sanctions can range from revocation of a sponsor's designation to "lesser sanctions" based on the nature and gravity of the infraction. 22 C.F.R. § 62.50(b)(1), (d)(1). Lesser sanctions may include probation, a requirement that a

---

[2] Although district court opinions are not generally binding on other district courts, *Sexton v. Wainright*, No. 2:18-CV-424, 2021 WL 779115, at *4 (S.D. Ohio Mar. 1, 2021), *supplemented*, No. 2:18-CV-424, 2021 WL 1267326 (S.D. Ohio Apr. 6, 2021), this Court finds the holdings in *SSWG v. Pompeo* persuasive.

sponsor submit a corrective action plan, and/or a "reduction in the authorized number of exchange visitors in the sponsor's program." *Id.* § 62.50(b)(1)(i)-(iv).

Before imposing lesser penalties, the Compliance Office typically notifies the sponsor in writing of that possibility and provides it an opportunity to submit a written response, along with any additional documentary material. *See id.* § 62.50(b)(2), (c)(2), (d)(2). And, after review, the Compliance Office "may, in its discretion, modify, withdraw, or confirm such [lesser] sanction" or even impose more severe ones. *Id.*[3]

Other than making referrals to the Compliance Office, the OPA has little role in the sanctions process. *See SSWG v. Pompeo*, 2020 WL 2561780, at *2. Even when a referral is made, the Compliance Office conducts its own review and makes its own decision regarding whether to impose sanctions. *Id.*

In August of 2019, the Department of State, acting through its office of Private Sector Exchange, sent letters of concern to thirty-two EVP sponsors, some of whom were members of the ACEO, and pointed out possible violations of EVP rules. (D.E. 9 at PageID 95–97.) These issues resulted from several activities, including: "[s]ignificant deviation in the host organization's practices from the program as described in its [Training/Internship Placement Plan]; [p]ortrayal of the program as a staffing tool; [d]escription of its program as composed of unskilled labor; [and] [d]escription of its program as lacking supervision or a training component." (D.E. 9 at PageID 95.) These concerns resulted from inquiries conducted by the OPA and the Department of State's Kentucky Consular Center. (D.E. 1 at PageID 2–4.)

---

[3] During the rulemaking process that produced the EVP sanctions regulation, commenters requested that "sponsors be given the opportunity to cure alleged violations before the [Department of State] imposes sanctions." 72 Fed. Reg. 72,245, 72,247 (Dec. 20, 2007). In its response to that request, the Department of State confirmed that it "seldom proposes formal sanctions without first engaging in informal discussions seeking to bring the sponsor into voluntary compliance." *Id.*

The OPA sent the letters of concern to express its reservations and provide "its instructions for program improvement." (D.E. 9 at PageID 95.) According to Defendants, the sponsors' deficient administration of the EVP "pose[d] serious risks to the EVP, to the well-being of exchange visitors, and to the foreign policy interests of the United States" and could violate federal regulations. (D.E. 9 at PageID 81.)

The letters stated that the sponsors "must" take remedial measures. (D.E. 9 at PageID 96.) However, they also revealed that failure to carry out those measures would result only in the OPA "recommend[ing] that [the Compliance Office] take further action" or in the Compliance Office "initiat[ing] an independent review." (D.E. 9 at PageID 96.)

The OPA followed up its letters with a clarifying email. (D.E. 9 at PageID 99.) Through that communication, the OPA explained that sponsors need not conduct site visits for "host organizations at which a sponsor has no active exchange visitors and at which the sponsor foresees no future placements" or for organizations visited as recently as Feb. 13, 2019. (D.E. 9 at PageID 99.)

      B.      Procedural History and *SSWG v. Pompeo* (W.D. Tenn.)

On October 8, 2020, ACEO filed this lawsuit to challenge the August 2019 letters of concern, alleging that the correspondence violated the APA because they purportedly constituted sanctions issued contrary to EVP regulations. (D.E. 1 at PageID 11–12.) It also contended the letters violated procedural due process, involving deprivation of property and liberty interests. (D.E. 1 at PageID 13.)

The Small Sponsors Working Group ("SSWG"), a group of businesses that sponsor exchange student programs through the EVP, previously brought a similar claim in this Court challenging the same August 2019 letters. *See SSWG v. Pompeo*, 2020 WL 2561780, at *1.

Many of the arguments in the two cases overlap, with the facts being nearly identical, and involving the same attorneys. *See id.* at *1–4. Moreover, ACEO's articles of incorporation provide that four persons serve as its directors: Jeff Laband; David Dahl; Debra Martin; and Patti Chiacchiero. (D.E. 1 at PageID 18.) These same individuals are signatories to a letter attached to ACEO's complaint identifying them as representatives of the SSWG. (D.E. 1 at PageID 22, 26–27.)

In *SSWG v. Pompeo*, Chief Judge S. Thomas Anderson of this Court denied SSWG's motion for a preliminary injunction, *SSWG v. Pompeo*, 2020 WL 2561780, at *8, and granted the defendants' motion to dismiss, *SSWG v. Pompeo*, No. 1:19-2600-STA-JAY, 2020 WL 3885411, at *1 (W.D. Tenn. July 9, 2020). Two findings in that case are particularly relevant here. First, the Court held that SSWG's due process claim was not ripe for review because it was contingent on future events that might never come to pass. *SSWG v. Pompeo*, 2020 WL 2561780, at *7. Second, the Court ruled that the letters of concern were not final agency action, and, therefore, plaintiff had failed to state a claim under the APA. *Id.* at *6–7.

### III.  ANALYSIS

A.  Fed. R. Civ. P. 12(b)(1)

1.  Standard of Review

A motion to dismiss under Rule 12(b)(1) can dispute the legal sufficiency of the complaint's allegations, and as Defendants' motion does here, it can also "challenge[] the factual existence of subject matter jurisdiction." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). One component of subject matter jurisdiction is ripeness. *See Norton v. Ashcroft*, 298 F.3d 547, 554 (6th Cir. 2002). The ripeness doctrine ensures that courts decide only existing, substantial controversies, not hypothetical questions or possibilities. *See Sch. Dist. of City of*

*Pontiac v. Sec'y of U.S. Dep't of Educ.*, 584 F.3d 253, 263 (6th Cir. 2009). If the claims are not "ripe for judicial review," federal courts lack subject matter jurisdiction, resulting in dismissal of the complaint. *See Norton*, 298 F.3d at 554.

To determine ripeness, courts consider three factors: "(1) the likelihood that the harm alleged will ever come to pass; (2) whether the factual record is sufficiently developed to allow for adjudication; and, (3) hardship to the parties if judicial review is denied." *Id*. The first factor is considered the most important. *See SSWG v. Pompeo*, 2020 WL 2561780, at *7 (citing *United Steelworkers of Am., Local 2116 v. Cyclops Corp.*, 860 F.2d 189, 194 (6th Cir. 1988)). As such, "a claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agricultural Products Co.,* 473 U.S. 568, 580–581 (1985)). The purpose of this requirement is to avoid "inappropriately interfer[ing] with further administrative action" and to ensure the courts may "benefit from further factual development of the issues presented." *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998).

Finally, where a motion to dismiss makes such a factual attack on subject matter jurisdiction, "a court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists." *Cartwright*, 751 F.3d at 759. This discretion includes the ability to consider "evidence outside of the pleadings." *Id*.

    2.    Application

Defendants aver that ACEO's claims hinge on future events that have not occurred or may never occur. (D.E. 9 at PageID 84–85.) Specifically, Defendants assert that Plaintiff's sponsors have the opportunity to work with the Department of State if they have difficulty implementing the OPA's recommendations set forth in the letters. (D.E. 9 at Page ID 85.) This

option might eliminate the need for at least some of the site visits to which Plaintiff objects. (D.E. 9 at Page ID 85.)

Defendants also claim that any potential harm to Plaintiff would only occur through sanctions, which have not even been levied. (D.E. 9 at Page ID 85.) Such penalties would only arise after a referral by the OPA, an independent inquiry by the Compliance Office, and notice with an opportunity for Plaintiff to be heard. (D.E. 9 at Page ID 85.) Defendants note that ACEO does not even allege that a referral has occurred. (D.E. 9 at Page ID 85.)

ACEO's argument depends on its insistence that the letters of concern constitute two "lesser sanctions," as defined in 22 C.F.R. § 62.50(b)(1), and are thus final agency action, making its claims ripe for review. (D.E. 13 at PageID 112–13.) More specifically, Plaintiff contends that the letters constitute a "written reprimand," defined by regulation as "a warning that repeated or persistent violations of the regulations may result in suspension or revocation of the sponsor's [EVP] designation, or other sanctions . . . ." 22 C.F.R. § 62.50(b)(1)(i). According to Plaintiff, the OPA's letters constitute "an explicit warning that the sponsor risks suspension or revocation of its designation," and therefore, they are letters of reprimand. (D.E. 13 at PageID 112.) ACEO also contends that the letters implement a "corrective action plan," which is another measure that may function as a "lesser sanction." (D.E. 13 at PageID 112.)

The Court disagrees that the missives constitute a written reprimand. The letters do not warn that the sponsors might be suspended or have their sponsor designation revoked. (*See* D.E. 9 at PageID 95–96.) In fact, they do not caution that any sanctions might result. (*See* D.E. 9 at PageID 95–96.) Such a notification is necessary to satisfy the regulatory definition of a written reprimand. *See* 22 C.F.R. § 62.50(b)(1)(i).

8

ACEO's claim that the letters implement a corrective action plan is also incorrect. Before the Department of State imposes such a lesser sanction, it advises the sponsor in writing of its intent to sanction and gives the sponsor an opportunity to respond. *Id*. § 62.50(b)(2). Plaintiff has not submitted any evidence that the Department of State has notified ACEO of its intent to require Plaintiff put into effect such a plan. Accordingly, the Court finds that the letters of concern are not an attempt by the Department of State to implement a corrective action plan.

Additionally, as recognized by this Court in *SSWG v. Pompeo*, Plaintiff's sponsors have the opportunity to work with the Department of State if they have difficulty implementing the OPA's recommendations. *See SSWG v. Pompeo*, 2020 WL 2561780, at *7. Moreover, the OPA may decide not to refer the issues outlined in the letters to the Compliance Office independent of whether Plaintiff's sponsors implement OPA's recommendations. *See id.* Further, any injury to Plaintiff's interests would occur through sanctions, which would follow an independent inquiry by the Compliance Office and a process that provides notice and an opportunity for the sponsor to be heard. *See* 22 C.F.R. § 62.50. None of these predicates have occurred. Therefore, Plaintiff's claims are not ripe for judicial review as there is not an existing, substantial controversy but only hypothetical possibilities. *See Déjà vu of Nashville, Inc. v. Met. Gov't of Nashville*, 274 F.3d 377, 399 (6th Cir. 2001).

For these reasons, the Court finds that Plaintiff's claims should be dismissed under Fed. R. Civ. P. 12(b)(1). Even with the Court's conclusion that Plaintiff's assertions are deficient under Fed. R. Civ. P. 12(b)(1), it will proceed to analyze and make findings on Defendants' alternative position that the case should be dismissed under Fed. R. Civ. P. 12(b)(6).

    B.    Fed. R. Civ. P. 12(b)(6)

        1.    Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This means that the complaint must contain factual allegations that, taken as true, "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This burden is not satisfied if the allegations are simply "consistent with" or show a "sheer possibility" of liability. *Iqbal*, 556 U.S. at 678. When determining whether the plausibility threshold has been surpassed, courts need not accept as true allegations in the complaint that are actually mere legal conclusions. *Id.*

A court's review of a Rule 12(b)(6) motion is typically limited to the allegations in the complaint, however, a court may also consider matters of public record, items in the record of the case, and any exhibits attached to the complaint. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011); *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001).

    2.    Application

        a)    Count I

Count I of the complaint alleges that the Defendants took arbitrary and capricious action in violation of the APA. (D.E. 1 at PageID 11–12.) Judicial review is available under the APA only with respect to "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Accordingly, a plaintiff fails to state a claim unless it can show that its "injury stems from a final agency action." *Jama v. Dep't of Homeland Sec.*, 760 F.3d 490, 495 (6th Cir. 2014).

A two-element test must be satisfied to show that an agency action is final. "First, the action must mark the consummation of the agency's decision[-]making process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights

or obligations have been determined, or from which legal consequences will flow." *Parsons v. U.S. Dep't of Justice*, 878 F.3d 162, 167 (6th Cir. 2017) (quoting *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 136 S. Ct. 1807, 1813 (2016)). The tentativeness of an agency action may be shown both by its own terms and by later clarifying agency statements. *See Air Brake Sys., Inc. v. Mineta*, 357 F.3d 632, 638–39, 646 (6th Cir. 2004).

      Here, the Court finds that the letters of concern are not the consummation of the Department of State's decision-making process. This is shown by subsequent statements by the Department of State, the regulatory context, and the letters. *See SSWG v. Pompeo*, 2020 WL 2561780, at *6–7. The letters are clear that failure to adhere to the stated recommendations would only result in the OPA making recommendations to the Compliance Office which then might initiate an independent review. (D.E. 9 at PageID 96.) The outcome of any such investigation would not be controlled by these communications. *See* 10 Foreign Affairs Manual § 252.4 (stating that the Compliance Office "[m]aintains sole authority to recommend appropriate sanctions"); *see also SSWG v. Pompeo*, 2020 WL 2561780, at *6 (concluding that the letters of concern would not control the Compliance Office's investigation). The OPA initially receives the complaint and attempts to remedy any deficiencies before involving the Compliance Office. (D.E. 9 at PageID 95–96.) The OPA has clarified that it seeks to work with sponsors that have difficulty carrying out the recommendations. (D.E. 9 at PageID 99.) For these reasons, the Court finds that the agency action challenged in this proceeding is not "final" under the APA.

      Additionally, no legal consequences flow from the letters of concern. They only warn that further investigations may be required if non-compliance continues. (D.E. 9 at PageID 95–96.) The fact that the OPA may make a referral to the Compliance Office based on the matters described in the letters or that the Compliance Office could be influenced by the OPA's views

does not show that legal consequences flow from them. *See Parsons*, 878 F.3d at 168; *Jama*, 760 F.3d at 496. This is true even when an agency could rely on a document like the letters in taking later action. *See Parsons*, 878 F.3d at 168. Moreover, the Court in *SSWG v. Pompeo* faced the same legal issue and reached the identical conclusion. *SSWG v. Pompeo*, 2020 WL 2561780, at *7. Accordingly, the Court finds that no legal consequences flow from the letters of concern.

Without citing to any case law, Plaintiff also avers that "although there is the threat of future adverse effects, the [letters of concern], though not as severe as suspension or revocation of designation, impose[] an obligation on the recipients to act." (D.E. 13 at PageID 115.) And, according to Plaintiff, this "may" make the letters a final agency action. (D.E. 13 at PageID 115.) Once again, the Court disagrees as it finds that the Department of State's effort is not final because the negative effect of that undertaking may or may not occur depending on future administrative conduct. *Parsons*, 878 F.3d at 168; *Jama*, 760 F.3d at 496.

        b)       Count II

In Count II, ACEO avers that the letters impose sanctions and threaten damage to its reputation and business goodwill. (D.E. 13 at PageID 116.) Plaintiff also insists that the moratorium on the designation of new intern and training sponsors, as well as a restriction on the program expansion of existing sponsors, deprives Plaintiff's members of the ability to expand their businesses. (D.E. 13 at PageID 116.) According to Plaintiff, this act is in violation of the Fifth Amendment's prohibition of the federal government depriving individuals of rights without due process of law. (D.E. 13 at PageID 116.)

"To establish a violation of substantive due process, a plaintiff must first establish the existence of a constitutionally-protected property or liberty interest." *Johnson v. Morales*, 946 F.3d 911, 932 (6th Cir. 2020) (quoting *Silver v. Franklin Twp., Bd. of Zoning Appeals*, 966 F.2d

1031, 1036 (6th Cir. 1992)). "[T]he property interest in a person's means of livelihood is one of the most significant that an individual can possess." *United Pet Supply, Inc. v. City of Chattanooga*, 768 F.3d 464, 486 (6th Cir. 2014) (quoting *Ramsey v. Bd. Of Educ. of Whitley Cnty.*, 844 F.2d 1268, 1273 (6th Cir. 1988)). Additionally, "a protected liberty interest may be implicated by certain injuries to a person's reputation or good name which threaten to restrain the individual's freedom to pursue business or employment opportunities." *Med Corp. v. City of Lima*, 296 F.3d 404, 413 (6th Cir. 2002) (citing *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971)). In the Sixth Circuit, a plaintiff must satisfy five elements to establish a deprivation of this type of interest:

> First, the allegedly stigmatizing statements must be made in connection with "the loss of a governmental right, benefit, or entitlement." There is no constitutional liberty interest in one's reputation standing alone. Second, a plaintiff alleging an injury to a liberty interest must show that the defendant made defamatory statements that would foreclose his freedom to take advantage of other employment opportunities. Third, "the stigmatizing statements or charges must be made public." "Fourth, the plaintiff must claim that the charges made against him were false." And "[l]astly, the public dissemination must have been voluntary."

*Id*. at 414 (internal citations omitted). The same elements apply to a claim based on injury to business goodwill. *See id.* at 416.

ACEO does not satisfy some of the essential elements of a due process claim based upon injury to its reputation. The second requirement—that defendant made defamatory statements—has been interpreted by the Sixth Circuit as necessitating plaintiffs to prove that the statements foreclosed their freedom to take advantage of other business opportunities. *See id*. at 414. It is not enough for a statement to "merely make[] a plaintiff less attractive." *Id*. (quoting *Ludwig v. Bd. of Trustees of Ferris State Univ.*, 123 F.3d 404, 410 (6th Cir. 1997)). Thus, comments about "improper or inadequate performance, incompetence, neglect of duty or malfeasance" do not

13

suffice. *Ludwig*, 123 F.3d at 410. Instead, "[a] moral stigma such as immorality or dishonesty is required." *Id*.

ACEO avers that the claims that the sponsors' host organizations used the program as a staffing tool for unskilled labor has permanently damaged the reputations of those sponsors. (D.E. 13 at PageID 117.) The Court disagrees. At worst, the Department of State's statements merely makes the sponsors less attractive. Such allegations do not rise to a level of attaching a stigma of immorality or dishonesty.

For example, in *Meyers v. Vill. of Oxford*, the Sixth Circuit found that the plaintiffs, who were reserve police officers for the local police department, sufficiently alleged statements made by defendants were stigmatizing as the statements "accused [the plaintiffs] of illegally impersonating police officers." 739 F. App'x 336, 342 (6th Cir. 2018). Such accusations clearly attached a taint of immorality and dishonesty that would prevent the plaintiffs from working. *Id*. at 341–42. Similarly, in *Mertik v. Blalock*, the Sixth held that the plaintiff, a professional figure skating instructor who worked at skating rinks frequented by children, had presented sufficient facts when she "alleged loss of employment opportunities resulting from the stigmatizing effect of being branded a child abuser" by one of the defendants. 983 F.2d 1353, 1364 (6th Cir. 1993). Here, Plaintiff's claims fall short of these examples and fail to satisfy the burden of the second element.

The third hurdle—the statements must be made public—is also not cleared. ACEO fails to establish that the Defendants have publicly discussed the issues raised in the letters of concern or transmitted them to anyone other than the particular addressees. Instead, Plaintiff has claimed that although the Department of State does not currently have a list of sanctioned sponsors on its website, it could one day put that list on its website. (D.E. 13 at PageID 10–11.) This is not

enough. The threat of future publication does not satisfy this requirement nor does such speculation satisfy federal pleading standards. *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").

Moreover, although the issues raised in the Department of State's letters have been disclosed in this lawsuit, the Sixth Circuit has ruled that if a disclosure is made in the process of judicial proceedings, that revelation does not satisfy the publication element. *Med Corp.*, 296 F.3d at 415 n.2 (holding that "[t]he fact that the [defendant's] allegations might be disclosed as a result of the instant legal proceedings is insufficient to satisfy the disclosure requirement"). Therefore, it is clear that Plaintiff fails to satisfy this required element.

Next, ACEO insists that its members have a protectable property interest in their retention as EVP sponsors. (*See* D.E. 1 at PageID 13; D.E. 13 at PageID 116–117.) The Sixth Circuit has determined that a party "cannot possess a property interest in the receipt of a benefit when the [government's] decision to award or withhold the benefit is wholly discretionary." *Med Corp.*, 296 F.3d at 409 (citing *Richardson v. Twp. of Brady*, 218 F.3d 508, 517 (6th Cir. 2000)). Here, the EVP regulations reserve significant discretion in the Department of State in selecting and retaining program sponsors. *See* 22 C.F.R. § 62.12(d) ("[The Department of State] has the sole discretion to determine the number of Forms DS-2019 to be issued to a sponsor."); *id.* § 62.6(a) (explaining that Department of State "may, in its sole discretion," decline to designate entities as program sponsors, even if they "meet[] all statutory and regulatory requirements"). Therefore, the Due Process Clause does not protect Plaintiff's "unilateral expectation" of its members' property interest in their retention as EVP sponsors. *See Med Corp.*, 296 F.3d at 409–10.

Finally, ACEO appears to allege that it has a property interest in the application of proper procedures. (*See* D.E. 1 at PageID 13.) More specifically, it avers that the Department of State

15

did not follow its own rules and regulations in sending the letters of concern because they were issued in violation of the APA's notice-and-comment requirement. (D.E. 1 at PageID 13.) According to Plaintiff, this misstep violated the Due Process Clause. (D.E. 1 at PageID 13.)

The Supreme Court has rejected similar arguments, stating that the "categories of substance and procedure are distinct" and that "[w]ere the rule otherwise, the [Due Process] Clause would be reduced to a mere tautology." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). When considering these arguments, the Supreme Court has stated that although the Due Process Clause protects substantive rights, those rights "cannot be defined by the procedures provided for its deprivation." *Id*.

Here, the Court concludes that Plaintiff's position fails on the same basis. ACEO cannot be deprived of property in violation of the Due Process Clause simply because of a procedural issue within the Department of State.

IV.   CONCLUSION

Based on the foregoing, the Defendants' motion to dismiss (D.E. 9) is **GRANTED** and Plaintiff's claims are therefore **DISMISSED**. Moreover, given the Court's ruling, Plaintiff's appeal of Magistrate Judge Jon A. York's order assigning this case to the administrative track (D.E. 22) is rendered **MOOT**.

IT IS SO ORDERED this 15th day of June 2021.

s/ J. DANIEL BREEN

UNITED STATES DISTRICT JUDGE